NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1002n.06

**No. 10-5522**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| GRIDER DRUGS, LLC, et al., | ) | **FILED** |
|  | ) | *Sep 13, 2012* |
| Plaintiffs-Appellants, | ) | DEBORAH S. HUNT, Clerk |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
|  | ) | DISTRICT OF KENTUCKY |
| EXPRESS SCRIPTS, INC., KELLY | ) |  |
| HENSLEY, and JOHN DUDINSKIE, | ) |  |
|  | ) | OPINION |
| Defendants-Appellees. | ) |  |
|  | ) |  |

Before:  SILER and MOORE, Circuit Judges; and VAN TATENHOVE, District Judge.[*]

**VAN TATENHOVE**, District Judge.  Grider Drugs is a pharmacy located in Russell County, Kentucky.  It asks us to reinstate a lawsuit brought in an effort to maintain a business relationship with a pharmacy benefit manager, Express Scripts, Inc.  For important jurisprudential reasons we require that the arguments made in this court are first brought to the attention of the district judge.  Grider Drugs failed to do that.  For that reason, we will AFFIRM the district court dismissal and deny Grider Drugs' request for relief.

**I.**

At one point, Grider Drugs had a contract with Express Scripts under which, Express Scripts was required to supply pharmaceutical drugs to Grider for the benefit of its clients.  These clients

---

[*]  The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

included insurance companies and, importantly in this case, the Department of Defense. Under the arrangement, individuals who had benefits through the Department of Defense could fill their prescriptions at network pharmacies, including Grider. The contract between Grider and Express Scripts allowed either party to terminate the contract for any reason upon ninety days' notice to the other party. Express Scripts exercised this right after two of Grider's principals were investigated for crimes relating to illegal drug distribution and Medicaid fraud.

Grider responded by bringing a state law cause of action for perjury and tortious interference with a contract in Kentucky state court against both Express Scripts and two agents in the Kentucky Attorney General's office, Kelly Hensley and John Dudinskie. The Hensley and Dudinskie allegations resulted from their roles in investigating the criminal charges and subsequent communication with Express Scripts about their findings. The action was properly removed to federal court by Express Scripts. Shortly after removal, Express Scripts moved for dismissal and Grider moved for remand. The district court considered both matters in the same opinion, denying remand and dismissing the case based on the state court complaint.

Grider then moved under Federal Rule of Civil Procedure 60(b) for relief from the judgment, arguing that there was a vast conspiracy to "get" the company and its leadership, and that it should be allowed to amend its complaint based on the nature of said conspiracy. The district court denied the Rule 60(b) motion and stated that, as a result, it was unable to reach the issue of whether amending the complaint was appropriate. Grider appeals the decision denying relief under Rule 60(b), but does so raising new arguments not brought before the district court.

In addition, Grider argues here, for the first time, that Judge Russell should have recused himself from the proceedings based on his financial interest in a company that conducted business

with the Defendant Express Scripts. Further, Grider argues that it is entitled to relief from judgment as a result of Judge Russell's failure to recuse *sua sponte*.[1]

## II.

The district court denied relief under Rule 60(b).[2] Grider asserts that it is entitled to relief under the catch-all provision of the rule, "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Essentially, Grider argues that dismissal was a miscarriage of justice and patently unfair because the district court dismissed its suit based on a complaint that was filed under the less stringent pleading standards of Kentucky. The district court did this at the same time as it ruled on a pending motion to remand. As a result, it argues, the entire suit was in a sort of limbo, where it was unclear whether the suit would remain in federal court. Grider argues that the district court should have denied its motion to remand in order to allow it an opportunity to amend its complaint to meet the federal pleading standard before dismissing it.

Whatever the relative merits of this argument may be, it would be inappropriate for this court to consider them. Grider makes this argument for the first time before this court. While Grider did file a 60(b) motion before the district court, it completely failed to argue or even suggest that relief was warranted because of the difference in the pleading standards between Kentucky's standard and the United States' standard. Instead, in a disjointed motion considered by the district court, Grider pointed to numerous alleged conspiratorial acts of various Kentucky and Federal officials and concluded that relief under Rule 60(b) must be warranted. It argued that, "[w]hat is actually taking

---

[1] Grider also appealed the district court's imposition of sanctions, but the parties who won sanctions were dismissed from the appeal after filing notice that they would not oppose the reversal of the sanction award and that they would not seek its collection. As those parties are no longer before the court, it would be improper for us to consider the issue.

[2] Grider moved for relief under Rule 60(b) and Rule 59 (allows alteration or amendment of judgment). However, its motion was not timely under Rule 59 so the district court considered it only under Rule 60(b).

place and easily proven in light of the new evidence is that the Defendants have been engaging in a scheme for some time to interfere with the 6th amendment rights of the employees of Plaintiff Grider Drug, Leon and Eric Grider." [district court docket entry ("R.") 34 at 5].

In addition, Grider only referred to the rule itself in the opening sentence and failed to tie any of its conspiratorial accusations to any of the specific prongs or grounds in the rule. While some of the arguments in the motion reference new evidence so that the motion could be fairly read to rely on Rule 60(b)(2),[3] Grider fails to assert that argument to this court. Indeed, Grider made plain in its appellate Reply that it is arguing for relief only under Rule 60(b)(6):

> [t]he dismissal of the unamended state court complaint for failure to comply with federal pleading requirements is a 'reason that justifies relief' in the form of re-opening the case to allow the plaintiffs to amend *once* their state court complaint. Fed. R. Civ. P. 60(b)(6) states that, '[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . *any other reason that justifies relief*.'

[Grider Reply at 7] (emphasis added by Grider).

The confusion over exactly what was being appealed is further evidenced by Hensley and Dudinskie's brief which argues exclusively that relief is not warranted based on Rule 60(b)(2), while failing to address Grider's pleading standards argument. [*See* Hensley and Dudinskie Response at 17-21]. In its Reply, Grider argues that the Hensley-Dudinskie "brief did not address the issue raised on appeal by Grider, but instead analyzed whether the plaintiffs below had produced sufficient 'new' evidence to garner relief under Fed. R. Civ. P. 60(b)(2)." [Grider Reply at 9-10].

---

[3] Under 60(b)(2), a court may grant a movant relief because of "newly discovered evidence, that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Grider's 60(b) motion states, "[s]ince the pleadings, leading up to the dismissal of the instant action, the Plaintiffs have obtained information and proof of a well defined conspiracy, revolving around a false belief that 'Grider must be guilty of something so let's go out and prove it.'" [R. 34 at 9]. In addition, Grider states that it "has discovered a plethora of new material and evidence which greatly support their claims as well as additional claims." [*Id.* at 8].

4

Based not only on these statements, but also on review of Grider's briefs as a whole, which fail to reference the "new evidence" basis of 60(b)(2), we must conclude that the only argument Grider is making before this court is the pleading standards argument. This is problematic for Grider because this issue was not raised before the district court in any of its filings before that court. The Sixth Circuit has previously stated that, "[w]hile we have never articulated precisely what constitutes raising an issue with the district court, we have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Here, Grider did not even raise the issue in reply or in a response. It never raised the issue at all. It was not properly before the district court at any point.

The consequence of this is significant. "[A]n argument not raised before the district court is waived on appeal to this Court." *Id*. at 552 (citations omitted). This rule is justified by three main concerns. "First, the rule eases appellate review by having the district court first consider the issue. Second, the rule ensures fairness to litigants by preventing surprise issues from appearing on appeal." *Id*. (internal quotations and citations omitted). Third, the rule "promote[s] 'judicial economy and the finality of judgments.'" *Fairlane Car Wash, Inc. v. Knight Enterprises, Inc.*, 396 Fed. Appx. 281 286 (6th Cir. 2010) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 244 (6th Cir. 1991)).

Because Grider did not properly preserve its pleading standards argument for appeal, we hold that it waived the argument. Relief cannot now be granted relying on such a theory at the appellate level.

## III.

Grider makes another argument to this court not raised below. According to Grider, it was plain error for Judge Russell not to recuse himself *sua sponte* based on his financial interests in a non-party, and this error should result in reversal of his order and disqualification in any future litigation in this matter. This argument is another whose merits should not be considered because it was not preserved for appeal.

To briefly outline the nature of Judge Russell's challenged financial interest[4] and the basis of Grider's challenge: during the district court litigation, Judge Russell owned a modest amount of stock (less than $15,000) in the company, Allscripts. In 2000, Express Scripts, a defendant to this action, announced via a press release, that it was entering into a "strategic alliance" with Allscripts, and that "[a]s a major component of the strategic alliance, Express Scripts will provide marketing support and clinical assistance to Allscripts, in addition to service fees based on the number of high-prescribing physicians who use the Personal Prescriber for the majority of prescriptions written for Express Scripts' patients." [Grider brief at 45].[5] In short, Allscripts hired Express Scripts to provide certain services to it. Allegedly, this "strategic alliance" continues today. Grider argues that the above factual circumstance mandates recusal under 28 U.S.C. § 455(a), which states, in its entirety, that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

Much like the different pleading standards argument discussed above, this argument was not raised before the district court; Grider never moved for recusal. It argues that this court should

---

[4] Grider asks us to take judicial notice of three facts which form the basis of this outline. We grant Grider's request pursuant to Federal Rule of Evidence 201(b)(2) and 201(d).

[5] The website Grider Drugs cites and which it quotes in its brief does not produce the press release. Instead, only an "error" page is viewable.

6

review Judge Russell's failure to recuse himself *sua sponte* under a "plain error" standard. As support for this argument, Grider directs the court to Eighth Circuit precedent which states, "[o]rdinarily, we review a judge's refusal to recuse for an abuse of discretion. However, when a recusal claim is not raised below, we apply a lower standard of appellate review and review only for plain error." *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 663 (8th Cir. 2003) (internal citations omitted).

Whatever the status of the law may be in the Eighth Circuit, it is not the same here. Recusal arguments such as this one, based on 28 U.S.C. § 455(a), which are not brought before the district court, are deemed waived. There is Sixth Circuit precedent directly on point addressing this issue. "Unless exceptional circumstances exist, this Court normally will decline to address an issue not raised in the district court. This general rule bars an appellate court from considering a recusal issue that was not initially raised in the trial court." *Callihan v. Kentucky*, 36 Fed. Appx. 551, 552 (6th Cir. 2002) (internal citation omitted); *see also In re Eagle-Picher Industries, Inc.*, 963 F.2d 855, 863 (6th Cir. 1992) (relying on the "general rule . . . that appellate courts are not to address issues not raised for the first time in the trial court" to conclude that it was appropriate to "decline to consider the issue of recusal because it was not raised in the bankruptcy court"); *Cook v. Cleveland State University*, 13 Fed. Appx. 320, 322 (6th Cir. 2001) ("Th[e] general rule bars an appellate court from considering a recusal issue that was not initially raised in the trial court.").

Grider fails to address the Sixth Circuit rule or argue why it should be overturned in favor of the Eighth Circuit rule. It mistakenly assumes that the Eighth Circuit rule applies. We will not oblige such an assumption and, instead, simply apply the existing Sixth Circuit rule and find the

7

issue waived.  Because Grider failed to raise the recusal issue before the district court, we hold that it was waived and not properly preserved for appeal.[6]

## IV.

For the reasons stated above, we affirm the district court and find that none of the bases relied upon by Grider for appeal were properly preserved at the district court.[7]

---

[6] Even if the court were to entertain the merits of Grider's argument, Judge Russell's interest would not qualify as one which would cause his impartiality to reasonably be questioned.  Grider urges the court to find plain error based on the assertion that whenever companies have gone through the trouble of announcing a business relationship through a press release, they have such a close relationship that a judge's interest in one must preclude him from presiding over a case involving the other.  Adoption of such a rule would lead to preposterous results.  A judge with stock in Bank of America or Wal-Mart would be precluded from hearing innumerable cases simply because a corporate party may obtain financing through Bank of America or deliver dog food to Wal-Mart.  There was no plain error here.

[7] Express Scripts seeks sanctions against Grider pursuant to Federal Rule of Appellate Procedure 38, alleging Grider filed a frivolous appeal.  We deny Express Scripts' motion.  "Sanctions are not appropriate simply because an appellant's case 'may indeed be quite weak.'"  *B & H Medical, L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 271 (6th Cir. 2008) (quoting *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 308 (6th Cir. 2008)).  It is only the rare case where sanctions are appropriate, and typically when the appeal involves an improper purpose or entirely baseless arguments.  *Id.* ("[W]e generally impose sanctions only in the rare case when an appeal involves an improper purpose, such as harassment or delay").  This is not that case and we will not impose sanctions.